Our second case for this morning is AutoNation, Inc. v. NLRB. Mr. Lomanak. May it please the Court, my name is Rayburn Lomanak and I represent the employer in this appeal. The first issue on review involves the Board's two-to-one decision reversing the ALJ and finding that employee Jose Huerta was discharged because of his alleged union activity. We're here today because the panel majority gutted a key element of the familiar right-line test for establishing whether union activity motivated an employment decision. Now, AutoNation's agent, Sterling, sent letters to Huerta indicating that he was about to be terminated and then, of course, in fact, he was terminated. Those letters were ostensibly signed by Libertyville Toyota. Why is the employer not bound by the acts of its agent? I read the letters. Anyone receiving those letters would believe he had been terminated. Your Honor, we don't even need to get to the Sterling letters because it's undisputed on the record in this case and undisturbed by the panel majority in this case that the sole decision-maker, General Manager Tasso Theodoru, had absolutely no anti-union animus in his decision. I don't think that that is as undisputed and clear as you say because I want to come back to the Board's opinion. This is page 4 from the majority of the Board's opinion because I think you're misconstruing the way the majority addresses right-line. It's not the world's best prose, and I might not give it a high grade in an English class, but that's not what we're doing. What they say, and I'm looking precisely at page 4 of the Board's opinion, they mention right-line and they say, the General Counsel must prove that an employee's union or other protected activity was a motivating factor in the employer's action. Okay, so they acknowledge there has to be a causal effect. Then they go on to describe something that's quite similar to the McDonnell-Douglas approach in employment discrimination tests. You can start with three elements that would permit an inference of the right kind of animus. That would be union or protected activity, the employer knowledge of that activity, and union animus. And then the burden shifts to the employer to show that it would have done the same thing anyway, and then it shifts back again. It's very much like McDonnell-Douglas. And so once all of that is said and done, I think we're just talking about whether direct or circumstantial evidence shows the necessary motivating factor, the necessary nexus, if you will, between the employer's animus against the union and the way it applies that animus, the motivating factor for the employee. And I really think, given our deferential standard of review, it's troublesome to me to pick apart individual sentences and accuse the Board of doing something I just don't read it as doing. I don't see how you can wish away that that first sentence, that the employee's union activity, not some general thing, but the employee's union activity was a motivating factor. Your Honor, they state that in their decision, but that's not what supports their conclusion. I'm not sure that's true, though. So if you're conceding that they do state an acceptable rule in their decision, then they have a lot of evidence about Mr. Davis' participation. It's not like Theodoru was just off in a bubble, you know, unassociated with anybody else in the company. They state in a conclusory fashion that it was a motivating factor, but as Member Misamara points out, the way they got there was completely... Well, we're not following the dissent, right? You know, he was the dissenter. All of us have had the unfortunate position of being the dissenter from time to time, and regrettably, that's not what the outcome is. Absolutely, Your Honor. However, Member Misamara is expressing a reasonable basis for the determination, and this Court's review... He reads the opinion that way. I respect his right to do that, but the Board majority is the opinion we have to evaluate. We have to evaluate it for consistency, obviously with the law in the light of the correct standard of review, and I don't see anything wrong with its... I don't think you have to find something wrong, let me put it that way, with its statement, even though I might not have worded it that way, and I think that the Board majority also addresses your point about whether this was just Theodoru off in an isolated way, deciding that he's going to fire Huerta. Theodoru listens to the anonymous voice message. Theodoru is perfectly aware of everything that's going on. And even though Theodoru claimed not to know about the automated letters, he knew that Huerta was under the misimpression that he had been fired, and he did nothing to create that misimpression created by, as I said earlier, the employer's agent before firing him for job abandonment. Your Honor, the panel majority did not, they expressly did not find a causal connection or a link or a nexus between the union activity and the ultimate decision. They take no issue with that. They expressly state that in a footnote, so their position is that a link is not required. Well, that would be wrong, but I'm looking at not the footnote, but the primary language in the opinion. They note that the judge found that the general counsel showed that animus toward Huerta's union activity was a motivating factor in his suspension. No problem with that, and the same is true for the firing. Your Honor, the panel majority notes that. However, that does not support the panel majority's conclusion that anti-union animus motivated the termination decision. But there's plenty of evidence to show that it did, including the fact that it was well-known that Huerta and the other guy, Mir, were the two union organizers, that the treatment was different of his driving problems versus lots of other people's driving problems, and there's a ton of evidence to show that this is the union organizer they're getting rid of. We have to believe that. I think you guys easily could have won this case, but that's not the standard. But, Your Honor, that goes to knowledge. What's missing in the fundamental flaw in the board's analysis here is that there's no link between them, and that fundamental error there stems from the ALJ's undisturbed, credibility-based finding that Mr. Theodoro had no anti-union animus or Mr. Huerta animus, and that he was the sole decision-maker. Only now has the board attempted to argue on this appeal that Mr. Davis is somehow involved in this decision. That was never part of the panel majority's decision to begin with. In any event, the animus- Well, anyway, let me just go back to page 6. Hence, we find that the general counsel met his burden of showing that Huerta's union activity was a motivating factor in his discharge. Then they find pretext. I think that you are asking for a cherry-picked evaluation of the board's opinion. I would agree with you that if the board had actually come out and said there's no need to show even a motivating factor, that would be error that I don't find at all. Well, Your Honor, they do say that in a footnote. They say, in contrast- has been proven. That's right, Your Honor. The first stage of the right-line analysis is whether union activity was a motivating factor in the decision. Exactly. That's the first stage. But part of that first stage is where their error comes in because there's three elements to that first stage. Perhaps that's the confusion. The first stage involves three elements, one being knowledge of union activity, one being union activity, and the third being that causal relationship. I'm saying that looking at that in a fair way as the first part of a three-step burden-shifting approach, all they're saying is an initial inference of the improper motivating factor could be drawn from that, but the employer's entitled to rebut that if it can, and then the other side is entitled to come in and say that the effort at rebuttal was pretextual, and that's exactly what happens. They find pretext. They get all the way out to the end. Your Honor, the first stage of the right-line test is not an inferential stage. It's a burden of proof by a preponderance of the evidence. It's the entire general counsel case, unlike in a Title VII burden-shifting framework situation where the employee or the plaintiff presents some evidence and then that quickly shifts. They have to prove that first. Absolutely. They have to be able to prove that. Anyway, well, I understand your position. Sure, sure. So they have to prove that as a matter of fact. And I think they did prove it, but then once you've proven it, what do you know? That's the question. That's where the inference comes in. Exactly, and Your Honor, if I may, with respect to your question about the pretext serving as that basis, if you understand and recognize when evaluating cases like this that you can't rely on somebody else, a non-decision-maker's animus, which this Court has held before, then all you're left with in this case is that pretext. And so, as stated in our briefs, we disagree with the evidence that the Board claims supports its position that pretext existed. But even if you give them pretext here, pretext alone, and this Court has held pretext alone is not enough to establish motivation. But this isn't pretext. Go ahead, Judge Walton. In his termination, can the same evidence that supports a finding of pretext also support the intent element of the prima facie case? In other words, the Board found that the reason given for the termination, namely job abandonment, was a pretext. Why would that not be enough to support the prima facie case as well? Your Honor, this Court has specifically held in the Union Tribune case that pretext alone in a right-line context. But see, there's the alone word is the problem. Alone. Of course. I'm not using the alone word. Yeah, you're using the word alone, Judge Roper. You're adding things to my thoughts. You asked why is pretext not enough? Is that what you said? In this record. In this record to support a prima facie case. Right. And so, after reviewing lots of the facts on page 6, some of the facts that Judge Rovner's been mentioning about how this letter factored in, the Board writes, in those circumstances, we find that the respondent's claim of job abandonment was a thinly veiled pretext for ridding itself of a prominent Union supporter. See, bank tech. So, you know, again, a fair reading of the Board's opinion, I think, satisfies all of the criteria you've argued for. You know, Autonation argues that Huerta could not have come back to work in any case because he had not solved his driver's license problem in the time that was allotted. But there's evidence that driving was a minimal part of his job and waivers had been given to other employees in the same situation. What I'm wondering from you is this. Do you think there's an open question, an open fact question here for the ALJ to resolve? There's no open fact question, Your Honor, and all of the discussion and all the focus on pretext misses the boat with respect to the analysis because the General Counsel has to prove at the initial stage that Union activity motivated the decision. And they have not proven it because it's undisputed on the record that the decision-maker, the only decision-maker, that's unchallenged by the Board, the only decision-maker, the sole decision-maker did not have anti-Union animus. Case closed because that is the entire first stage of the analysis. And pretext alone, if you ignore everybody else's animus, you still can't rely on just pretext because all that proves is that the reason wasn't the real reason. Okay, even if it's not the real reason, that does not prove anything other than it's not the real reason. It doesn't show that Union activity was the actual motive, and that's the heart of this Court's opinions and other Courts' opinions who have recognized there has to be a causal link in the first stage of that right-line test. And to ignore that is to disregard all of the cases that this Court has held. In every single case, the focus in a right-line situation has been on the decision-makers' animus. And here, again, we don't have to even get there because it's undisputed. Well, we will discuss that with your opponents if you'd like to save a moment for a rebuttal. Thank you, Your Honor. I'd be glad to see what they have to say. Mr. Callahan. Well, you know what we want to hear, don't you? I have an idea, Your Honor. May it please the Court, Douglas Callahan for the National Labor Relations Board. The Board analyzed unlawful termination under the right-line standard, and the right-line standard has a back-end and a front-end. On the front-end, the Board asks, was anti-union animus a motivating factor in the discharge? And the Board concluded that in this case, the evidence showed that it supported that conclusion. So here's the problem. That may be exactly what the Board was doing, but the way this majority opinion is written opens the door for Mr. Lominak's argument because it's possible to read this as thinking that, you know, off there in the ether, there's some generalized dislike of unions, but that somehow it didn't have anything to do with this particular man's discharge. And that is not enough. Under this Court's law, you've got to show that the prohibited, you know, anti-union, anti-protected activity behavior was, at a minimum, a motivating factor. There's a nexus, which is whatever formula of words you want to use. And when you get into these footnotes and the dissenting members' discussion about the need for some extra nexus element, they say there's no extra nexus element. So maybe you can sort of deconstruct that for us because it's a little troubling to see the way the Board phrased it. Sure. So one thing, there's one regard in which I agree with what Opposing Counsel said, and that is that that initial, that front end of the right-line framework that I was mentioning, the Board acknowledges that the General Counsel does have a burden of proof there. That's the Greenwich Colliery's case. The Board in that case acknowledged that we actually have to prove, or that it's not that the Board has to prove, the General Counsel and the ALJ... General Counsel has to prove the protected activity, knowledge, and union animus. What I would say is that the General Counsel has to show that anti-union animus was a motivating factor, that it played some role in that overarching burden, that anti-union animus played a motivating factor, that it was present in the decision-maker's mind on some level. So Mr. Huerta's discharge was at least motivated in part. Was at least motivated, but we shouldn't exaggerate the size of that burden. The General Counsel doesn't have to show that it was a but-for cause. An employer could have a number of different motives swimming around in his head when he's contemplating a personnel action. And whether the anti-union animus was a but-for cause is reserved for the respondent's burden, that back end of the right-line analysis. Could I ask you to distill it this way? Whose intent is determinative for his determination? Theodora, Davis, the employer generally? What is the best evidence tying anti-union animus to the decision to terminate Huerta? If you could just... Sure. So it's appendix pages 396 to 397 and 401 to 404 where Brian Davis talks about his close involvement in the actual decision-making process. And then it's also the fact that Brian Davis... Remember that Libertyville Toyota is a wholly-owned subsidiary of AutoNation Incorporated, a huge S&P 500 company out in Fort Lauderdale. And Brian Davis is not just a third-party law firm lawyer who Theodora has called in for some even-handed advice. Brian Davis is the vice president of AutoNation. Brian Davis... But in addition to that, he's, like, in-house counsel for AutoNation and has as part of his portfolio of responsibilities union avoidance. And it's Theodora who, in this setup, even though he might have nominal decision-making authority, even though it might be his signature that's on these personnel action forms, it's Theodora who knows who ultimately his boss is and who is bringing that boss in to every single... Now, didn't he consult with Davis? I mean, unusually, right? He consults with Davis about this. That's exactly right, Your Honor. And the record evidence is crystal clear on that. This is the kind of situation, driver license suspensions, that comes up all the time, apparently, at this dealership. And Theodora has never saw... Not very recently. But it happens. And the table in the board's appendix shows that it happens on a pretty regular basis. And this is the first time Theodora has ever seen the need to go talk to the director of labor relations at AutoNation's headquarters and involve him in every step of the decision-making process. What I'd like to say about the ALJ's decision, which I think you're right, the opposing counsel's cherry-picking from, it is very, very far from a crystalline, logical product. And there are tensions in that decision that opposing counsel is not reckoning with. And the biggest tension is this idea that Theodora was the sole decision-maker, but on the other hand, opposing... that general counsel carried its right-line burden of showing that anti-union animus was a motivating factor in the suspension. That's on page 39 of the consolidated document that contains both the board's decision and the ALJ's decision. Not only did the ALJ find that... And I was looking at where the board... This is the board part over at page 7. It seems that the board accepts the facts that underlay the ALJ's decision that the claim of job abandonment was a pretext for ridding itself of a prominent union supporter. I read that as showing a link between the union activity and the job action. There's no question that pretext does serve as one of those links. I would say that another link is shown by this finding by the ALJ that the general counsel carried its burden with regard to the suspension, which is a finding of the ALJ that the board adopted. One thing I'd like... But the board doesn't adopt the idea that... Well, the board doesn't find a problem with the suspension, so the board agrees with the ALJ to that. The board agrees with the ALJ's finding that the GC carried its burden with regard to the suspension, and then the board agrees with the ALJ that the respondent carried its burden with regard to the suspension, though on different grounds. It objects, as in a number of respects, with the ALJ's reasoning, which it finds to be flawed and not consistent. But the important part here is that the ALJ very, very clearly found that the general counsel carried its burden of showing that anti-union animus was a motivating factor in the suspension and additionally found that there was a causal nexus there. As the board says, that was unnecessary under its established test, but the ALJ found that, and the board adopted that. So how is nexus unnecessary? This is something... If it's this unclear, it's an important thing we need to understand. Well, what I would say is that the board's... I mean, this whole set of footnotes over here on... Where are they? Page 4, Your Honor. Yeah, page 4. Footnote 10, I think, is the one to focus on. Right. What on earth does footnote 10 mean? Well, I think what footnote 10 says is that there's been this long, intrafamily dispute within the board between some dissenters and the majority, and the dissenters have consistently tried to import a fourth element into this preliminary analysis of right line. So what's the additional showing? Well, one of the problems that the board has with this nexus requirement is that it's undefined. But at the same time, the board says... I think the really important thing is at the very end of this footnote when the board says, this nexus requirement that the dissent keeps on harping on has never made a difference, and we're going to wait until it makes a difference before we have to cross this bridge. So they're somehow drawing a distinction between proving a motivating factor at one level and then proving something extra, some particular... I'm just trying to figure out what the data is now. They're saying that something... I think what's allowed by this... I would admit that the board isn't 110% crystal clear here, but what the board is saying is that there might be something extra there. Beyond motivating factor. Everybody agrees motivating factor. Well, motivating factor is the overarching test. I mean, I don't think... The board is already... The board has committed itself to that standard. That we have... In a review proceeding like this, we have to show the court that substantial evidence supports anti-union as being a motivating factor. But then if you're talking about the particular constituent elements of that, the board has said, well, there are these three elements and there very well might be something else in addition. And in all of our cases up until this point, there always has been something else in addition. But are we going to call it a nexus? Are we just going to import a fourth element, like the dissent wants? We don't think we're ready to do that yet. And the facts of this case don't require us to. The facts of alternation don't require you to. I mean, as the record shows, this case passes muster under this court standard. It passes muster under the dissent standard. There is a causal nexus and it's Brian Davis. If I may say just a few words about the Section 8A1 futility finding. Opposing counsel attempts to, presents several cases in its reply brief that it claims that we haven't distinguished. And what I would say about those cases, cases like International Paper Company   in which an employer, while addressing its employees in a captive audience, may not be able to make a decision based on the facts of the case. In fact,  at a bargaining meeting, pointed to other employees at a different facility and said, look, I've been at the bargaining table with these people. We've had contracts. And you know what? It hasn't come up roses for them. Some of them have actually lost wages during bargaining. And so let that be a lesson to you. A union's not always going to deliver higher wages. That is not what happened here. Here, Brian Davis stood up in front of those employees and said, look at my employees in Orlando. I have not had to sit down at a bargaining table with them. I haven't had one negotiating session. And it's been three years since they've selected the union. That is a totally and a categorically different kind of statement that really puts fear into employees. Living that nightmare for almost three years. He didn't mince words, Your Honor. Yes. Yes. You can also maybe say a quick word about the back pay and reinstatement question. Is this something that's to be determined later? Or is this something... Exactly, Your Honor. To be reserved. And that's the normal course of proceedings. I mean, that's the bifurcation of a case like this. And the reservation of back pay and reinstatement issues for compliance. That's very typical. That's very well established. And, you know, there is... It's not to say that what goes on in the compliance proceeding is going to be totally simple given what at least we've seen of the record of evidence so far. Right? I mean, would the employer in fact legitimately have a basis not to bring Huerta back given the fact that he hadn't been able to get his license for a while? What happens to people like Huerta? I mean, suppose Huerta has moved on in life, you know, from all of this and is living someplace elsewhere in the country and isn't really interested in reinstatement or back pay. Does it all just sort of dissipate at that point? I mean, practically speaking, that's the kind of... I mean, this must happen a lot, right? It does, Your Honor. And I'm involved in those kinds of settlement negotiations fairly often. Sometimes in exchange for waiving the offer of reinstatement, the employee gets a little bit of extra money. Sometimes the employee just... Sometimes the employee just walks away with 100% of back pay. It's not... Mm-hmm. Without... Because they don't want the job anymore. So they just get a monetary award. And because they understand that this is a hostile employer and they don't have a great desire to work at that location anymore. Mm-hmm. But again, that's... Sometimes employees do want to go back and they're willing... You know, I have dealt with other cases as well in which employees have moved far, far away, but they've never been able to find a job with comparable union benefits. And so they do want to come back to the original... to the original employment place. Mm-hmm. And that might be the case here. I don't know. I haven't been in contact with... They're not a union place at this point because the organizing effort fell apart, right, after Huerta was fired. That's right. Yeah. Okay. Thank you. Thank you very much. No, thank you. Oh, do you have any other questions? No. All right, anything further, Mr. Lominack? How much time does he have? You have about a minute. I guess it will be brief. Your Honor, opposing counsel hits nail on the head when he says that there's an intra-family dispute at the board on this whole causation issue. That's why we're here today. We're here for this court to address that recent change in the board law to recently, over the past few years, change and start deciding, contrary to the dissents at the board, that causation doesn't have to be proven to meet that first stage. That is not a correct application of right line. This court, Your Honor, you pointed out earlier and opposing counsel pointed out those three elements, being protected activity, knowledge of activity, and union animus. Well, those are the three elements that the majority, the panel majority, has pointed out and has pointed out in these other cases. What do we do with the fact that the panel majority finds, in fact, much more than that? Do we just disregard their findings? Well, Your Honor, they have not found more than that here. They've expressly said there is no causal connection. They find a motivating factor numerous times, a couple of times. They found the first stages met, but they don't find a causal connection. If I may finish that last thought. You can finish that thought. Those cases, the Huck case, the Clinton Electronics case, all recognize that causal connection element. Thank you, Your Honor, for your time. All right. Thank you very much. We will take the case